[Civ. No. 6782.   Third Dist.   Jan. 9, 1943.]

ED. L. CORDI, Respondent, v. ROSA GARCIA et al., Appellants.

Butler, Van Dyke & Harris and Carr & Kennedy for Appellants.

L. C. Smith for Respondent.

HAWKINS, J. pro tem.—This is an appeal from a judgment of the court, sitting without a jury, awarding damages for personal injuries received by respondent, in the sum of $9,000 as general damages, and $342.50 as special damages.

The evidence conclusively shows, and on the oral argument of this cause in this court it was conceded by appellants, that appellants were negligent and that their negligence was a proximate cause of certain injuries suffered by respondent. The sole grounds for reversal urged by appellants are:

First: That respondent was guilty of contributory negligence as a matter of law;

Second: That the trial court committed reversible error in admitting evidence of a second accident to respondent which they claim had no causal connection with the original accident; and

Third: That the damages awarded were so excessive as to justify a reversal of the judgment.

Viewing the evidence in the light most favorable to respondent, these are the essential facts:

Plaintiff, at the time of the accident, was a mail carrier in the city of Redding, California. He was about fifty years of age and had been carrying the mails for approximately thirteen years.

The accident occurred about three o'clock in the afternoon of June 24, 1937, on Gold Street, approximately in the middle of the block between California and Market Streets, which are three hundred and twenty-four feet apart from curb to curb. Gold Street runs east and west, California and Market Streets, north and south. California is west of Market Street. Gold Street measures fifty-six feet from curb to curb.

Shortly before the accident public authorities had been working on Gold Street and had left a loose mound of gravel down the center line of said street for the full length of the block, which was from four to six feet wide and about a foot high in the center.

Just before the accident respondent was walking along Gold Street. He made a mail delivery at about the middle of the block and then started to cross Gold Street to make a delivery on the other side. Before crossing he looked in both directions to see if any vehicles were coming. When he reached the mound in the center of the street he hesitated, saw nothing coming, and then proceeded to cross the north half of Gold Street, diagonally in a northeasterly direction, with his back partially turned toward California Street.

At about this time appellant Manuel Garcia was driving an automobile easterly on Gold Street. At or near the intersection with California Street he swerved to his left clear over to the north half of Gold Street and proceeded to drive down the left side of said Gold Street at a moderate rate of speed. He was eating an ice cream cone which had dripped on his trousers. His attention was absorbed in wiping the drippings from his trousers, and he did not see respondent until just before he struck him at a point about eight feet from the curb on the north side of Gold Street.

Respondent was knocked down but managed to hold onto the left fender of the car so as to avoid being run over. He was able to get up, and made a few more deliveries. Then "as everything was getting dark" he asked for relief from his duties and when relief came he was driven home.

The principal injuries sustained by respondent were to his chest, right leg and left shoulder, with some nervous shock. Respondent continued with his work up to June 26, 1940, although with difficulty because he was suffering con-

siderable pain while so doing. Then on the date last mentioned, while walking down some steps, his previously injured right leg gave way and he fell, receiving new and additional injuries, principally to his left leg and right shoulder, which had not been injured in the original accident. Thereafter he ceased to work at his occupation as a mail carrier.

In support of their first claimed ground for reversal, appellants argue that respondent, having stopped and looked to his left upon reaching the center of Gold Street, must have seen the approaching car and was guilty of contributory negligence as a matter of law in persisting in crossing the street in the face of an apparent danger.

To sustain their theory it must appear that there was no evidence to justify the trial court in concluding that respondent did not see said car.

There is no merit in this contention. In addition to the facts hereinbefore stated, the following testimony of respondent is sufficient to justify the trial court in concluding that the conduct of respondent at the time of the accident did not compel a finding of contributory negligence as a matter of law or otherwise.

"Q. Don't you recall that as you crossed Gold Street from the south side to the north side that you were looking northeasterly as you were walking? A. After I crossed the middle of the street I never looked back to see what was on the other side of the street. I did cross diagonally across the street. I can't say just exactly how much that was. Q. What did you say about never looking back? A. After I had passed the center of the street. Q. You didn't do what? A. I looked to see if there was anything coming when I left the curb on the opposite side, the south side, at intervals and when I got to the center I had started looking to Market which would be the line of traffic where traffic would be coming from. . . .

"Q. I didn't ask if you hesitated. I asked if after reaching the pile of gravel in the center of that street did you ever again look to your left to see if any cars were coming from California? A. I hesitated and there were no cars coming at that time. Q. Mr. Cordi, I didn't ask if you hesitated. I asked if you looked. A. I said there were no cars. . . .

"Q. Where were you after you passed that gravel when you looked toward California Street again? A. Not till

after I got up, I don't believe. I couldn't say, because the traffic would be coming from Market and I would be looking for Market Street for traffic after I passed the center. Q. You say after you got up? A. I never looked back to California until after I had gotten up and was over by the fence. Q. As a matter of fact don't you remember that as you were going across that street even after you passed the gravel you still looked for automobiles to your left? A. I was looking toward Market. I was in a diagonal condition and after I left the gravel— Q. I didn't ask you that. I asked if you don't remember that even after you passed that gravel you were still looking in both directions for cars coming from your left and right? A. I don't recollect that. . . .

"Q. Do I understand your testimony to be that at that time, although it was broad daylight, in the middle of the afternoon, with the sun shining, that you couldn't see that car? A. I had my back to it. I didn't look for any car behind me."

▮ Contributory negligence is a question of law only when the evidence in a given case compels one inference, that is, the negligence of the plaintiff. (*Hare* v. *Canfield,* 102 Cal. App. 124 [282 P. 405].)

▮ We find no merit in the second ground for reversal advanced by appellants. The evidence complained of was admissible at least for the limited purpose of showing the impaired condition of respondent's right leg; and that the trial court considered such evidence with this limitation is indicated by the language of the trial court in its decision. In said decision it also appears that the trial court awarded no damages for injuries occurring in the second accident. In said decision the court stated:

"The evidence of the second fall was proper, and if the court did not sufficiently deny the motion to strike on the trial, it now does so. The special damages not pleaded, but is evidence of the continuing condition of plaintiff up to the time of the second trial, and any evidence showing what have been the developments of his original injury was admissible to show the severity and effect on him. In allowing damages the court is not allowing anything for the effects of the fall on the doorsteps but for the injury caused by the bump he received from defendants' car, and this fall and its effects are the result of that original striking by defendants."

▮ Furthermore, it will be presumed on appeal that a court

trying a case without a jury considered only such evidence as was competent, provided legal evidence supports the judgment. (*Ford* v. *Lou Kum Shu*, 26 Cal.App. 203 [146 P. 199] ; *Smyers* v. *Raleigh*, 189 Okla. 32 [113 P.2d 363] ; *Watt* v. *Copeland*, 92 Cal.App. 161 [267 P. 928].)

That the court allowed damages only for injuries sustained in the first accident (to wit, to the chest, right leg, left arm and shoulder and nervous shock) is also indicated by the finding of fact on the subject of injuries, as follows:

"That by reason thereof [original accident], and as a direct and proximate result of the said negligence of defendant, plaintiff was severely and permanently injured on and about his body, receiving an injury to his chest, right leg, left arm and shoulder, and a severe shock to his nervous system; that plaintiff received an injury to his left shoulder permanent in character, and said injury will grow progressively worse, with an accompanying inability to raise his left arm beyond the level of his shoulder without extreme pain, and plaintiff is unable to use his said left arm so as to create pressure against his body with said arm; that plaintiff received an injury to his right leg below the knee, resulting in the thickening of the bone causing a decided and disabling limp, growing progressively worse; that said injuries are permanent and progressive, with resulting pain; that said injury to said leg is permanent; and that said injuries, and each of them, are painful and will continue to be painful and disabling the remainder of his natural life."

We find no merit in the third and last ground for reversal urged by appellants. It is true that respondent worked at his usual occupation up to the time of the second accident, but he was suffering from great pain in so doing and his condition was growing progressively worse. He had been compelled to discontinue doing a large volume of extra work which he had performed before his first injury. From the evidence produced the trial court had the right to draw the inference that, even if the second injury had not occurred, respondent could not have continued in his occupation as mail carrier much longer.

Unless we are able to say that the award of damages was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice or corruption,

rather than an honest and sober judgment, this court may not exercise the power of revision. (*Kelley* v. *Hodge Trans. System,* 197 Cal. 598, 610 [242 P. 76] ; *Miller* v. *Southern Cal. Tel. Co.,* 216 Cal. 391, 394 [14 P.2d 519] ; *Kirschbaum* v. *McCarthy,* 5 Cal. 2d 191, 195 [54 P.2d 8] ; 8 Cal.Jur. 834.)

The judgment is affirmed.

Thompson, J., and Adams, P. J., concurred.