[Civ. No. 16160.   Second Dist., Div. One.   Apr. 12, 1948.]

HARRY JAFFE, Respondent, v. JOSEPH L. VITZ, Appellant.

Bertram H. Ross for Appellant.

Loeb & Loeb and Keating Coffey for Respondent.

BARTLETT, J. pro tem.—This is an appeal from a judgment rendered in favor of the plaintiff for $5,000 on an action brought by him for the breach of the following agreement:

"October 5, 1945

"IN CONSIDERATION OF services rendered by HARRY JAFFE to the undersigned in connection with the transfer of possession of the Hermoyne Apartments, the subject of Pacific States Savings and Loan Company sales file H-4, the undersigned hereby agrees simultaneously with the execution of the agreement of transfer to pay to the said Harry Jaffe in full for such services the sum of Five Thousand ($5000.00) Dollars. Payable $1000.00 per month. Nov. 10, 1945.   JLV

(J. L. Vitz)"

The complaint set forth the contract and alleged the rendition of services by plaintiff for defendant and that there was a valuable consideration for the written contract. The answers denied that any services were rendered by plaintiff; denied that there was any consideration for the contract, and affirmatively alleged "that plaintiff has done nothing of value for this defendant other than to obtain from defendant the agreement set forth and pleaded . . . ." The answer also, as an affirmative defense, pleads fraud.

The appellant charges that the court erred in admitting certain evidence regarding services rendered prior to the date of contract by respondent in acquainting appellant with the Hermoyne Apartments and the other apartment houses, and further contends that there was a variance between

the pleading and the proof. He charges too that the trial judge was guilty of prejudicial misconduct.

At the time the rulings were made concerning the introduction of evidence of which plaintiff complains, the witness was Ted Berns, an employee of the plaintiff, who was being examined concerning time he had spent showing appellant the Hermoyne and other apartment houses. Appellant objected to this line of testimony and the following occurred:

"Q. Approximately how much time during every day did you spend with Mr. Vitz showing him properties?

"Mr. Ross: That is objected to as incompetent, irrelevant and immaterial. If the plaintiff is entitled to recover he is entitled to recover on the contract and not the time spent that this man showed buildings.

"The Court: Why is that not so, Mr. Coffey? He is not suing for time lost.

"Mr. Coffey: The issue, your Honor, has been raised that there was no consideration for this contract and my purpose is to show there were considerable services rendered by Mr. Jaffe.

"The Court: Well, if that is the purpose I think you have the right to show what was done in either time or money.

"The objection is overruled. . . ."

Appellant placed in issue the question of the services rendered and as to whether or not there was any consideration for the contract by his answer. Therefore, the court's rulings were correct and there was no variance between the pleading and the proof.

■ As indicated, we are of the opinion that this evidence was properly admitted but if it were not, appellant is in no position to complain. If appellant's motion to strike all of Mr. Berns' testimony had been granted there was still sufficient evidence to support the findings and judgment, as will be seen from the following significant statements of appellant in his brief:

"Appellant testified as to one version of the transaction, and respondent gave diametrically opposite testimony. It must be conceded that respondent's version of the transaction was corroborated by the deposition of Lenore D. Underwood, a Deputy Attorney General of the State of California, who had charge of the properties of the defunct Pacific States Savings & Loan Association."

"We shall not indulge in any argument concerning the conflict in evidence; suffice it to say that there was sufficient

evidence to support a finding either in favor of the appellant or the respondent. . . . The fact is that the trial court rejected appellant's views and the evidence is sufficient to justify that course.''

The law concerning the matter is clearly stated in *Keating* v. *Basich Bros., Const. Co.*, 66 Cal.App.2d 258, 263 [151 P.2d 892], as follows:

''The general rule prevailing in California on this subject is this: Where there is competent independent evidence in the record which supports the judgment without recourse to the testimony erroneously admitted, generally the error is not prejudicial as it will be presumed on appeal that the trial judge considered and relied upon the competent evidence in making his findings and rendering the judgment. (*Evans* v. *Gibson*, 220 Cal. 476 [31 P.2d 389]; *Roy* v. *Salisbury*, 21 Cal.2d 176 [130 P.2d 706]; *Frazure* v. *Fitzpatrick*, 21 Cal.2d 851 [136 P.2d 566]; *Ford* v. *Lou Kum Shu, supra* [26 Cal.App. 203 (146 P. 199)]; *Watt* v. *Copeland*, 92 Cal.App. 161 [267 P. 928]; *Cordi* v. *Garcia*, 56 Cal.App.2d 584 [132 P.2d 887].)''

The only other question to consider is whether or not the trial judge was guilty of any prejudicial misconduct. The acts of misconduct specified are three in number as follows:

1. ''THE COURT: This man seems to think every question you ask him is an excuse for opening his mouth and letting the words pour out.''

2. ''BY THE COURT: How did you come to initial it? Aren't those your initials? This is a simple question: Aren't those your initials? A. It looks like my initials, your Honor.

''Q. How did you come to initial it? A. Well, I don't know how it comes there, but it looks like mine, although there are signatures that look like others.

''THE COURT: ''All right. I do not see what some people expect the court to believe. Go ahead.''

3. ''THE COURT: Judgment for the plaintiff as prayed and I will state very frankly that the defendant has shown himself to be such a liar that I did not consider his testimony too highly, and the testimony was that a rough draft of this particular document was shown to him and that was not only testified to by the plaintiff, but also by a disinterested witness, Mrs. Underwood, who is a state officer, and who testified by her deposition that sheets were brought in and shown to both of them. I think the defendant is about as big a liar as I have seen in court for some time.''

This case was tried before the court without a jury. From a reading of the entire record it is apparent that both sides received a fair trial. Appellant calls our attention to two cases; one of these is *Rosenfield* v. *Vosper*, 45 Cal.App.2d 365 [114 P.2d 29], where the judge, before the defendants had an opportunity to introduce any evidence, urged them to settle the case for $7,500. This they failed to do and at the conclusion of the trial, the court rendered judgment against them for over $12,500. Nothing like that happened here. Appellant does not charge, and there is no intimation, that the judge prejudged the case. In fact, the remarks of the court, of which complaint is made, were uttered either after the case had closed or as the end of the trial neared and the witness in question had already been thoroughly impeached by an entirely disinterested witness.

More nearly in point is the other case cited by appellant, *Smith* v. *Coleman*, 46 Cal.App.2d 507 [116 P.2d 133]. In that case the same judge was accused of misconduct. The similarity of the import of the remarks as made and the rule to be applied are well shown by the following excerpt from pages 513 and 514 of the opinion in that case:

"Defendants charge that certain remarks of the trial judge made at the conclusion of the trial show bias and prejudice on his part. These remarks were to the effect that defendants, whom the judge referred to as 'butchers and bunglers,' were either committing perjury or were suffering from a loss of memory; and that Dr. Cass, an expert witness for defendants, 'was doing all he could to cover up his professional brethren.' In reference to the firm for which plaintiff was employed, the judge said: 'If the concern were to fail—and if Roosevelt remains in office much longer everybody will fail—then he may be looking for another job.' The action was tried before the court without a jury and it was the duty of the judge to pass upon the credibility of the witnesses and to determine the facts from the evidence. The judge had the right to announce the mental processes by which he determined the credibility of the witnesses and by which he arrived at his conclusions. A new trial cannot be demanded upon the ground that the judge in exercising this right may have exceeded the bounds of propriety."

Judgment is affirmed.

Doran, Acting P. J., and White, J., concurred.