[Civ. No. 15015. Second Dist., Div. Two. Nov. 23, 1945.]

CHARLOTTE PRICE, Respondent, v. JACK PRICE,
Appellant.

Samuel Marks and Newby, Holder & Newby for Appellant.

Frank J. Indovina for Respondent.

McCOMB, J.—Defendant appeals from an interlocutory decree of divorce entered in favor of plaintiff predicated upon extreme cruelty of defendant.

The evidence being viewed in the light most favorable to the plaintiff (respondent), and pursuant to the rules set forth in *Estate of Isenberg,* 63 Cal.App.2d 214, 216 et seq. [146 P.2d 424], the essential facts are:

Defendant on numerous occasions struck and kicked plaintiff; pointed a gun at plaintiff and on one occasion had her arrested.

The trial court found that the community property consisted of (1) $2,800 (maturity value) of war bonds, (2) a 1942 De Soto automobile, (3) household furniture, (4) two milk trucks, (5) a milk business, and (6) $286 in cash.

The court awarded plaintiff the sum of $2,500 and also her personal effects. The court gave defendant the furniture in his possession, the 1942 De Soto automobile, the two trucks and the milk business. No disposition was made of the war bonds nor the cash of $286.

Defendant relies for reversal of the judgment on four propositions which will be stated and answered hereunder seriatim:

First: *There is not sufficient evidence to sustain the finding that defendant was extremely cruel to plaintiff.*

This proposition is untenable. Plaintiff testified that defendant struck her, threw her clothing on the floor, kicked her and pointed a gun at her; also that he had caused her to be arrested. This evidence, if believed, as it was by the trial judge, was substantial evidence to sustain the trial court's finding that defendant was extremely cruel to plaintiff.

Second: *There is not any corroborative evidence of the acts of extreme cruelty.*

This proposition is likewise untenable. Mrs. Dorothy S. Farrel, the sister of the plaintiff, testified that she had heard defendant threaten to strike plaintiff and that she had seen marks and bruises on the arms and face and other parts of the body of plaintiff which plaintiff stated were caused by defendant. She further testified that plaintiff became very nervous and upset as the result of these beatings.

This testimony constituted sufficient corroboration of plaintiff's testimony as to defendant's cruelty in view of the established law in California that if there is corroborative evidence of one or more facts showing cruelty, such evidence is sufficient to satisfy the requirements of section 130 of the Civil Code. (*Ungemach* v. *Ungemach*, 61 Cal.App.2d 29, 34 [142 P.2d 99].)

It is also to be noted that in such a case as the present, where the action is contested and it is apparent that no collusion exists, the corroboration required is slight and its sufficiency is largely for the determination of the trial judge. (*Ungemach* v. *Ungemach*, *supra*, 36.)

Third: *The trial court committed prejudicial error in its rulings upon the admission and rejection of evidence in the following instances.*

(a) During the cross-examination of plaintiff the following occurred:

"Mr. Marks: Were you ever in a school for incorrigible girls? A. Yes.

"Mr. Indovina: I make a motion that be stricken on the grounds it is incompetent, irrelevant and immaterial.

"The Court: Motion granted."

The trial court's ruling was correct. The issue before the court was whether plaintiff or defendant had been extremely cruel to the other subsequent to their marriage. It was entirely immaterial whether plaintiff had been in a school for incorrigible girls prior to her marriage and such fact had no bearing on the issue before the trial court.

(b) During the examination of Mrs. Dorothy S. Farrel the following occurred:

"Mr. Indovina: What was the cause of his losing his job? A. Dishonesty. He was taking his customer's milk bills.

"By Mr. Marks:

"Q. Who told you that? A. A very dear friend of Mr. Price's.

"Q. What was the name of this friend? A. I do not recall. I know his wife's name is Rita. Jimmie Walker.

"Q. He told you that? A. Yes sir.

"Mr. Marks: I ask that the answer be stricken out. It it hearsay, what somebody else told her.

"The Court: Motion is denied."

The trial court's ruling was correct. The law is established in California that where evidence is admitted as in the instant case without objection, a motion to strike it out is properly denied provided, as here, an opportunity to object is presented. (*Murphy* v. *Davis*, 181 Cal. 706, 720 [186 P. 143]; *Nisbet* v. *Rhinehart*, 2 Cal.2d 477, 482 [42 P.2d 71]; *Oakland Barge etc. Co.* v. *Foster*, 25 Cal.App. 193, 198 [143 P. 83].)

(c) While defendant was being examined, the following occurred:

"By Mr. Marks:

"Q. Did you have any conversation with your wife in May, 1944, about Carl Dunster? A. Yes.

"Q. Did she say anything about Carl Dunster giving her a venereal disease?

"Mr. Indovina: This is the second time counsel has done this, tried by subterfuge to get this evidence before the court, when he promised us he was not naming this man as corespondent.

"Mr. Marks: I think it is part of our cruelty charges whether or not she had a venereal disease, and whether or not she informed her husband she had a venereal disease.

"The Court: Objection sustained."

We will not consider whether the trial court properly sustained the objection to the question set forth above for the reason that the law is established in California that where a question to which an objection is sustained does not in itself indicate that the answer to it will be favorable to the party seeking to introduce the testimony, before the ruling will be reviewed on appeal an offer of what is proposed to be proven must first be made to the trial court so that the reviewing court can determine whether the proposed evidence would have been material and beneficial to the party offering it. (*Sumida* v. *Pacific Auto. Ins. Co.,* 51 Cal.App. 2d 472, 478 [125 P.2d 87].) In the present case the question to which objection was sustained did not indicate that the answer would be in the affirmative and thus material or beneficial to defendant nor was any offer of proof made as to the answer the witness would give to the question.

 (d) During the cross-examination of defendant this occurred:

"Mr. Indovina: Now do you remember signing a complaint you filed in Los Angeles, an original complaint in an action wherein you sued your wife at the same time she filed an action here? A. Yes.

"Q. On page 2 of the complaint, paragraph IV: 'That the community property of the parties hereto consists of furniture and furnishings of the value of $500.00, and $2,400.00 in cash.' Did you mention any bonds in that connection? . . .

"Mr. Marks: That is objected to, your Honor, he is not reading from a verified complaint. . . .

"The Court: What are you reading from?

"Mr. Indovina: A copy served on us.

"The Court: Overruled. You may answer."

The trial court's ruling was correct. The document was not offered in evidence. Counsel apparently used it merely for the purpose of refreshing his memory as to questions he desired to ask the witness. There was no attempt to introduce the document in evidence or to use it for the purpose of impeaching the witness's testimony.

 Fourth: *The court erred in its division of the community property.*

The law is established in California that community property may be awarded where a divorce is granted on the ground of extreme cruelty in such manner as the court from all the facts of the case and the condition of the parties may deem just. (Civ. Code, § 146, subd. 1.)

In the absence of a clear abuse of discretion this court is without authority to disturb the order of the trial court awarding the community property. In the instant case there is no showing that the trial court abused its discretion. Plaintiff received the sum of $2,500, while the defendant was awarded (a) furniture valued at $1,000, (b) trucks valued at $1,200, (c) a De Soto automobile worth $1,450, and (d) a milk route of undetermined value. It is evident the foregoing disposition of the community property was not unfair to either party.

It is unnecessary for us to consider the failure of the trial court to make disposition of the war bonds and cash which it found to be community property, for the reason that defendant concedes that the cash was consumed in the payment of attorney's fees and that there was no evidence to sustain the trial court's finding that there was $2,800 (maturity value) war bonds. Based on defendant's concession such community property did not exist and therefore the trial court did not err in failing to dispose of the same.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.